UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LASANDRA NORMAN, | |
| Plaintiff, | |
| v. | CASE NO.: 2:18-cv-204-PPS-JEM |
| CITY OF LAKE STATION, INDIANA, TROY ALLEN, and KEV MCCANN, | |
| Defendants. | |

## OPINION AND ORDER

Plaintiff Lasandra Norman, representing herself, has sued the City of Lake Station as well as two police officers with the Lake Station Police Department, Troy Allen and Kev McCann. [DE 1.] Norman was arrested by the officers for drunk driving and was later convicted at a trial in state court. Norman alleges that she was unconstitutionally searched and arrested by the officers and suffered other compensable injuries as a result of their actions. I previously set aside the entry of default against these defendants who originally failed to answer or otherwise respond to this lawsuit. Norman now asks me to reconsider that order [DE 46]. She also filed two other motions, one seeking a default judgment [DE 55] and another asking for a hearing regarding the defense attorney's "credentials" [DE 52], both of which will be summarily denied. The defendants, for their part, now seek dismissal of the lawsuit in its entirety on various grounds. As outlined below, those motions will be GRANTED.

## Background

I'll begin with the procedural background of the case because it is lengthy and necessary to explain why this generally simple case is only in the nascent motion to dismiss stage nearly two years after it was filed. Plaintiff Lasandra Norman filed her case on May 25, 2018 and soon thereafter amended her complaint. [DE 1, 4.] The Court granted her leave to proceed *in forma pauperis*, and ordered the amended complaint served on the defendants by the United States Marshal Services. [DE 6.] Service of the summons and amended complaint was effectuated by certified mail on defendants Allen, McCann and the City of Lake Station soon thereafter. [DE 8, 9, and 11.] That occurred in July 2018. [*Id*.] But none of these defendants ever responded or entered an appearance in the case. Ms. Norman then sought, and the Court entered, a default against the defendants under Federal Rule of Civil Procedure 55(a) because of their failure to respond. [DE 23, 26, 38.]

In April of 2019 this case was transferred to me from Judge Moody. [DE 33.] Because the defendants never responded to the amended complaint, I ordered Norman to provide evidence to prove up her alleged damages, and I gave the defendants one last opportunity to answer before potentially proceeding to the default *judgment* phase. [DE 35.] I directed the Clerk of Court to send a copy of the order to the City of Lake Station where the amended complaint had previously been served. [*Id.*] The defendants subsequently entered appearances in the case and soon after asked to have the entries of default set aside on the grounds that the original complaint and summons were misplaced after delivery and they were unaware of the lawsuit until then. [DE 44.]

On November 21, 2019, I granted the motion to set aside the default which had been entered in this case and ordered the defendants to respond to the amended complaint. [DE 45.] Ms. Norman filed a Motion for Reconsideration that decision. [DE 46.] The defendants subsequently filed two motions to dismiss, one by defendant McCann asserting there was insufficient service of process on him [DE 47], and a motion to dismiss for failure to state a claim by the City and defendant Allen [DE 49.] Ms. Norman opposed the motions to dismiss, and she filed a motion for a status hearing because she questioned the credentials of the attorneys retained by the defendants. [DE 52, 53.] Most recently, Norman has filed a Memorandum of Law in support of her Motion for Default Final Judgement, despite my earlier order setting aside the entry of default against the three defendants. [*See* DE 55.] I've interpreted that as a motion for a default judgment. It is this suite of motions which is now presently before me.

As for the substantive facts of the case, I will summarize them as they are presented in Norman's amended complaint, because for purposes of a motion to dismiss I must take them as true. [DE 4.] On the evening of December 29, 2017, Norman was driving her daughter home from work in the snow near Hobart, Indiana. [DE 4 at ¶ 1.] She was pulled over by Officer Allen for speeding and driving dangerously. Officer Allen asked Norman if she had been drinking, she denied it, and she agreed to do a field sobriety test. [*Id.* at ¶ 2.] As part of the field test, Officer Allen administered a portable breathalyzer and informed Norman she was three times over the legal blood alcohol limit to drive, although she continued to deny it. [*Id.*]

At some point, a second officer, defendant McCann, arrived on the scene. Norman says that Officer Allen handcuffed her, placed her on the hood of his patrol car, searched her and then put her into the backseat. Norman says that during her arrest, she complained her handcuffs were too tight and alleges that she has permanent handcuff marks on her wrists as a result. [DE 4 at ¶¶ 3-4.] Norman further alleges that the officers used racial slurs while speaking to her and laughed about her arrest after she mentioned she wanted to go to law school. From there, her car was towed, and Norman was transported to the Lake Station Police Department. While there, she refused to participate in any additional sobriety tests, and she was transported to the Lake County Jail. [*Id.* at ¶ 5.] That is where the allegations against Officers Allen and McCann come to an end.

Norman next alleges that while at the Lake County Jail she was assaulted by four different officers who bent her wrists and pushed her so hard that she then vomited blood. [DE 4 at ¶ 7.] Norman does not name who those officers were, nor has she sued them either by name or in a "John Doe" capacity. She further alleges that while at the jail she was denied a blanket or cover and was forced to lay on a bare steel bench. [*Id.*]

Norman attached a copy of her arrest report to her original complaint and references it in her amended complaint. This report, authored by Officer Allen, confirms that Norman was arrested for drunk driving and notes that at the police station, she refused to perform any additional sobriety tests. Obviously, many of the allegations of Norman's complaint contradict Officer Allen's version of events, and where they differ, I must take Norman's well-pleaded version as true.

While not included in the complaint, the defendants have also attached as exhibits to their motions to dismiss, court records which reflect the disposition of Norman's criminal case post-arrest. [DE 50-1 and 50-2.] Norman was prosecuted as a result of this incident and found guilty after a bench trial of operating a vehicle while intoxicated in a matter that endangered a person with a passenger under eighteen years of age, a felony under IC 9-30-5-3(a)(2)(C). [*Id.*] Norman was sentenced to a year in jail, but the court suspended the sentence to time served. Norman is also presently appealing her criminal conviction. Thus, I can take judicial notice of the results of those proceedings. Norman seeks $5 million in damages from the defendants as a result of the ordeal outlined in her amended complaint.

## Discussion

### A. Plaintiff's Motions

As mentioned, there are multiple motions before me. Before getting to the motions to dismiss filed by the defendants, I will address the motions filed by Ms. Norman, who is representing herself.

First up is Norman's motion for reconsideration of my order setting aside the previous entry of default against the defendants. The Federal Rules of Civil Procedure do not expressly include a motion for reconsideration, but courts entertain them generally as motions to alter or amend under Rule 59(e). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). They are appropriately granted only where a court has "patently

misunderstood a party or has made a decision outside the adversarial issues presented to the Court by the parties or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990). But a reconsideration motion is not a chance for a redo. *Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 757 (N.D. Ill. 2005) (citing *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir.2000)).

Norman has not provided any basis to reconsider my order setting aside the entry of default in this case. As I explained in that prior order, Ms. Norman did not obtain a default *judgment* in this case. Instead, there was merely the entry of default. And although the standards that apply to the two situations are the same, the application of that standard is distinct. *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994). The standard is applied in a more stringent way when a default judgment has been entered. *Id.* This is sensible given the text of Rule 55(c) which makes a distinction between entries of default and default judgments. Vacating a default judgment is more difficult because Rule 60(b) and its "respect for the finality of judgments" comes into play. *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994). As the Seventh Circuit has stated, where a defendant seeks to set aside an entry of default, district courts should be more "lenient" towards them than when considering the setting aside of a default judgment. This is because of the "policy of favoring trial on the merits over default judgment." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 631 (7th Cir. 2009). Thus, motions to vacate the entry of default are generally granted, so long as a

defaulting party can offer some reasonable explanation for their prior failures to respond and have some possible defense. *Id.* In this case, I found that to be present, based upon the sworn affidavits submitted by the City that the complaint was inadvertently lost in a bureaucratic mishap and that they received no other information relating to the case, including the orders and motions filed, until the order I specifically ordered be served on the City was delivered. [DE 45.]

In asking me to reconsider setting aside the entry of default, Norman does not tread new ground. It is clear she disagrees with my written opinion and likewise does not believe the explanation offered by the City as to why they did not previously respond to the lawsuit. She further reiterates her demand for a $5 million award of damages. At bottom, these are repeats of her previously offered arguments and none of them warrant a different result. As such, I will deny Norman's Motion for Reconsideration

With the entry of default against the defendants still set aside, there is no basis for Norman's motion for a default judgment. Accordingly, that motion will be denied too.

Third, I will address Norman's "Motion for a status Hearing regarding the credentials of all attorney's representing Lake Station, Indiana." [DE 52.] While styled as a motion for a hearing, it is in substance more of a motion for discovery, asking for documentation relating to the credentials of the lawyers representing the defendants in this case. Seeking court intervention for discovery is procedurally improper at this point. Norman must first request documents from the defendants through the

discovery processes outlined in the Federal Rules of Civil Procedure. It is only if she is unable to obtain relevant documents that she may seek court intervention. And it must be done in compliance with the Federal Rules of Civil Procedure and the Local Rules of this District. Thus, thus motion will be denied as well.

And while I will not speak definitively about matters not properly before me, it seems rather clear that what Norman seeks is not the proper subject of discovery, as it has no bearing on the facts or merits of the case. Instead, it seems like an attempt by Norman to harass the lawyers on the other side—something I previously warned her against doing so long as she is in a litigant in this Court. [DE 45 at 5-6.] Any additional efforts by Norman to harass or otherwise behave unprofessionally towards the Court or the defendants' attorneys will not be tolerated.

**B. The Defendants' Motions to Dismiss**

Now I will address the motions to dismiss filed by the defendants. Officer McCann has moved to dismiss or alternatively quash the service against him as insufficient under Indiana law. And he has also joined the substantive motion to dismiss filed by his co-defendants (Officer Allen and the City of Lake Station) which states that Norman's complaint fails to state a claim upon which relief can be granted. Because resolution of the City and Officer Allen's substantive motion resolves this case entirely, I won't delve into the procedural issues surrounding the service on Defendant McCann.

Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) so those familiar standards are at play. In order to overcome a motion to

dismiss, a complaint must state a claim with enough facts that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plausibility means more than a mere speculative right to relief, although obviously this is not summary judgment and a plaintiff need not prove their case from the outset or cite evidence. *Id.* But the allegations must be well-plead and contain sufficient facts; legal conclusions and other conclusory allegations unsupported by fact are to be ignored. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). In making this decision, I will assume all well-pleaded allegations as true and view the alleged facts in a light most favorable to Norman. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.2d 323, 326 (7th Cir. 2000).

Furthermore, evaluating whether Norman's complaint plausibly states a claim, I must give her leeway since she is proceeding without a lawyer. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). As such, I do not expect Norman to adhere to the common formatting or structures of a complaint that I would expect from an experienced lawyer.

Norman does not delineate what specific claims she is asserting against the three Defendants. But I can surmise from her amended complaint that she is alleging claims for false arrest without probable cause, violation of her Fourth Amendment rights against an unreasonable search or seizure, using improper and excessive force in

arresting her, and malicious prosecution.[1] If sufficiently pleaded, such claims are properly brought pursuant to 42 U.S.C. § 1983, which allows individuals to sue other individuals who violate their civil rights while "acting under color of state law"—in other words, police officers or other state government officials. And by suing the City of Lake Station for these same constitutional and civil rights violations, she is asserting what are called "*Monell* claims" pursuant to *Monell v. Dept. of Soc. Svcs. Of City of New York*. 436 U.S. 658 (1978). In addition, Norman says that her right to be free from cruel and unusual punishment (a claim under the Eighth Amendment of the Constitution) was violated while she was in in the custody of the Lake County Jail after refusing to participate in any more sobriety tests at the police station. But those allegations relate to her treatment in the Lake County Jail, not by the City of Lake Station or its police officers, and Norman has not sued any defendant associated with the Lake County Jail. Thus, those claims are non-starters.

Defendants' first argument is the Norman's claims that her arrest and prosecution were unconstitutional are barred by *Heck v. Humphrey*, 512 U.S. 477 (1993). In *Heck*, the Supreme Court held that civil lawsuit claims under Section 1983 which would invariably call into question the validity of an underlying criminal conviction are

---

[1] Norman's amended complaint includes a list of 20 reasons or claims, some of which, read liberally, would state the claims I have listed. Other "reasons" or alleged claims, such as a state prosecutor offering her a plea bargain, unexplained "intimidation tactics", "Citizen control tactics" and vague "Racial Bias" do not state claims. [DE 4 at 4-5.] I can liberally construe Norman's complaint, but I cannot rewrite her complaint. *See Cunningham v. Foresters Fin. Servs., Inc.*, 300 F. Supp. 3d 1004, 1012 (N.D. Ind. 2018) ("*pro se* filings must be construed liberally, but even *pro se* litigants must follow the rules of civil procedure").

barred, unless that criminal conviction has been overturned, pardoned or similarly expunged. This is to curtail "collateral attacks" on state court criminal judgments in federal court. The Seventh Circuit has held that the *Heck* rule applies in a case very similar to this. *Gordon v. Miller*, 528 Fed. App'x 673, 674 (7th Cir. 2013). In *Gordon*, a prisoner filed suit challenging the constitutionality of his arrest and prosecution for drunk driving and maintained he was innocent of the charge. But because he had been convicted of the crime under Wisconsin law, a federal court could not hear his Section 1983 lawsuit because his conviction remained on the books. The same logic applies here. If Norman were to prevail in this lawsuit by proving that she was sober and driving under the speed limit and carefully the night she was arrested (as she alleges in her complaint), it would directly contradict and thus call into question her criminal conviction. *See also McCann v. Neilsen*, 466 F.3d 619, 621-22 (7th Cir. 2006).

Thus, until Ms. Norman is successful in having her conviction overturned on appeal or through a writ of habeas corpus, or successfully petitions the Governor of Indiana for a pardon, she is unable to assert her claim that her arrest for drunk driving was unlawful because she was convicted of that very crime. And until such time as the conviction is overturned or otherwise vacated, federal courts are unable to hear her claim that her arrest and prosecution were in violation of her rights.

Norman's additional claims or arguments likewise do not state a basis for relief. Norman says she was arrested in Hobart and that it was improper for Lake Station police officers to arrest her there. But there is nothing illegal, wrong, or unconstitutional about that on its own. *See Pasiewicz v. Lake County Forest Preserve*, 270 F.3d 520, 526 (7th

Cir. 2001) (reiterating that a violation of state law by police does not necessarily give rise to a federal constitutional claim). Furthermore, police in Indiana are not confined to only operate within certain city limits and may lawfully arrest an individual anywhere in the state. *See Spranger v. State*, 498 N.E.2d 931, 942 (Ind. 1986).

That brings us to Norman's claim that the police used excessive force while arresting her. This claim is not clearly barred as a matter of law like Norman's other claims, as police are not allowed to use excessive force when performing an otherwise perfectly lawful arrest. The basis for Norman's claim that the methods of her arrest were in violation of the constitution were that her person was searched during her arrest by a male officer and that her handcuffs were too tight. I'll address each.

Norman takes issue with the fact she was subject to a pat-down search when she was arrested. But touching by a police officer during a search as part of an arrest is not a constitutional violation, it's expected and generally necessary. *See Davis v. United States*, 564 U.S. 229, 232 (2011) ("a police officer who makes a lawful arrest may conduct a warrantless search of the arrestee's person"). Nor is there any constitutional right to be free from being touched as part of a routine pat-down search by a member of the opposite sex. *See, e.g.*, *Canedy v. Boardman*, 16 F.3d 183, 187 (7th Cir. 1994) ("[P]at-down searches [of male inmates] and occasional or inadvertent sighting by female prison employees of inmates in their cells or open showers do not violate the inmates' right to privacy."). Thus, this aspect of Norman's claim cannot survive defendants' motion to dismiss.

As for the claim that her handcuffs were too tight, it's a closer call, but Norman has not sufficiently pleaded enough facts to state a claim. Norman says that she complained "more than once" during the car ride that her handcuffs were too tight but not does allege what she said or how many times she complained. [DE 4 at ¶ 4.] But it could not have been that many, because while she disputes where she was arrested and challenges the police officer's jurisdiction (discussed above), the fact remains that Hobart and Lake Station, Indiana are next to one another. Thus, the drive to the police station could not have been more than twenty minutes, likely less. Norman says she has "permanent" marks as a result of the handcuffs, but that seems inconceivable from being handcuffed for only a short period of time and without some other major injury. She lists no such injury, such as a fracture, bleeding, numbness, nerve damage, or bruising from the handcuffs. And she makes no claim that she asked for or needed medical attention as a result. Nor does she allege any lasting numbness or pain. Without those, there is no viable claim. "With respect to the application of handcuffs too tightly, courts have found no viable excessive force claim where the plaintiff complained only twice following his arrest about the cuffs being too tight, his wrists were red for one and one-half days, and he received no medical care for his wrists." *Verser v. Hubbard*, No. 10 C 7513, 2011 WL 2173754, at *2 (N.D. Ill. June 1, 2011) (discussing *Tibbs v. City of Chicago,* 469 F.3d 661, 663 (7th Cir. 2006)); *id.* (finding plaintiff sufficiently stated a claim based upon too-tight handcuffs where individual complained multiple times and "suffered numbness and nerve damage" as a result). In the absence

of allegations of more physical damage or harm from the handcuffs which would suggest excessive force on the part of police, there is no claim.

It is worth noting again that Norman alleges that while she was in the Lake County Jail, four different officers attacked her and "bent [her] wrist back very hard, and pushed in my back so hard I threw up blood." [DE 4 at ¶ 7.] But she has not named any of those defendants in this lawsuit and so these facts have little to no bearing on the issues or lawsuit before me. Similarly, Norman's claim that her bond was set at $2,000 and that she had to pay $230 in total to get her car out of impound and pay $5 for a copy of her police report has put her in a financial bind, fails to state a claim. It is a truism that those arrested for drunk driving incur expenses as a result, but that fact alone does not make for a constitutional violation. An arrest by its very nature is likely going to be a rather unpleasant experience for anyone, but law enforcement must be given space and the ability to do their necessary job. *See Banks v. Superintendent*, No. 3:10-CV-150 TLS, 2011 WL 2604343, at *2 (N.D. Ind. June 30, 2011).

The last claim to address is Norman's claim that the City of Lake Station should be held accountable for the actions of the individual police officers. As a general matter, employers like a city cannot be held liable under the traditional theory of liability known as *respondeat superior* for violations of Section 1983. *Monell*, 436 U.S. at 691. Nor could there be in this specific case because, as discussed above, Norman fails to state any plausible claims against the individual officers. Without an underlying constitutional violation, there can be no *Monell* liability. In any event, to hold a municipality liable, a plaintiff must allege (and eventually prove) that there is an official

policy or practice or custom which violates the civil or constitutional rights in question. Here, none is alleged, nor is it plausible to infer one based on what was an isolated incident between Norman and two police officers. Accordingly, Norman's claim against the City of Lake Station will be dismissed.

Given that I find Norman's complaint is insufficient to state a claim on a substantive basis, I need not address the more procedural arguments based on insufficient or inadequate service raised by Officer McCann.

**Conclusion**

For the foregoing reasons, Plaintiff Lasandra Norman's Motion for Reconsideration [DE 46] is DENIED; Plaintiff Lasandra Norman's Motion for Hearing [DE 52] is DENIED; and to the extent Plaintiff Lasandra Norman's Memorandum of Law in Support of a Motion for Default Final Judgment [DE 55] is construed as a motion for a default judgment, it is likewise DENIED. Additionally, Defendants' Motion to Dismiss for Failure to State a Claim [DE 49] is GRANTED; Defendant Troy Allen's Motion to Dismiss for Insufficient Process [DE 47] is DENIED, without prejudice.

Because the bulk of Norman's claims relate to her allegedly false arrest and malicious prosecution and are barred by the *Heck* doctrine, allowing her another opportunity to amend her complaint would be futile as to those claims. However, Norman's claim relating to the allegedly too tight handcuffs placed on her is not categorically barred by *Heck* and thus she should be given one more opportunity to replead her claim. If Norman can truthfully alleged additional facts to overcome the shortcomings of her claim noted in this opinion, she may potentially state a claim as it

relates to the handcuffs. Accordingly, Norman is given 30 days (until April 30, 2020) to re-plead her claim relating to her allegedly too tight handcuffs. If she does not file an amended complaint by April 30, her case will be dismissed and I will direct the Clerk to close the case.

SO ORDERED on March 30, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT